OPINION
{¶ 1} Darren Harris appeals from his conviction and sentence in the Montgomery County Common Pleas Court on one count of rape by force in violation of R.C. § 2907.02(A)(2).
 {¶ 2} Harris advances two assignments of error on appeal. First, he contends the trial court erred in admitting prejudicial "other acts" testimony. Second, he asserts that his conviction is against the manifest weight of the evidence.
 {¶ 3} The present appeal stems from events that occurred on the night of June 25, 2001. That evening, thirteen-year-old A.W. arrived home and found that she was locked out of her Miami Township apartment. While A.W. waited on the porch for Michele Houston, her mother, to return home from work, Harris arrived driving Houston's car. When A.W. saw Harris, who sometimes stayed at the apartment, she asked him to open the door. Harris complied and they both went inside. Upon entering the apartment, A.W. went to her bedroom, locked the door, and began putting things away. According to A.W., Harris subsequently opened her door, which had a faulty lock, and entered her room. A.W. told Harris to leave and he did so.
 {¶ 4} A.W. then went into the bathroom, locked the door, and took a bath. After finishing her bath, she dressed and returned to her bedroom, where she found Harris sitting on her bed. Trying to ignore Harris, A.W. left her bedroom and went into the kitchen. Harris followed and began touching her breast and neck while saying something like, "Oh, baby, you know you want this stuff." A.W. rejected his advance and returned to her bedroom, locked the door, and sat on her bed. Shortly thereafter, Harris entered her bedroom again and tried to pull down the stretch pants that she was wearing. Although A.W. resisted, Harris pulled her pants down to knee level. As she kicked and screamed, he pinned her arms over her head with one hand. He also pinned her legs down with his legs and used his free hand to remove his pants. Harris then pulled down A.W's underwear and placed his penis in her vagina. After A.W. threatened to tell her mother and father what Harris was doing, he got off of her and went into the bathroom. A.W. then fled the house in tears and boarded a bus. She rode to a bus stop near Lyons Road, where she exited and called Nicole Wiggins, her aunt. When Wiggins answered the telephone, A.W. told her that Harris "did it again."
 {¶ 5} Wiggins made arrangements for Mashell McCleskey to meet A.W. at a nearby Wal-Mart store. After picking up A.W., McCleskey also picked up Wiggins. The three of them then went to Miami Valley Hospital, where A.W. spoke with police and underwent a sexual assault examination. During the examination, nurse Carolyn Shockley collected what appeared to be semen in A.W.'s vagina. Swabs taken by the nurse later were examined and tested by Annette Davis, a forensic scientist at the Miami Valley Regional Crime Laboratory. Davis found semen on labial swabs and the speculum used during A.W.'s examination. Davis also found sperm cells on a vaginal smear slide. After obtaining a blood sample from Harris, who had been arrested in connection with the incident, Davis completed a DNA analysis of the semen from the labial swabs. Her most sophisticated testing technique revealed a one in 2.8 million chance that the semen found in A.W.'s vagina came from someone other than Harris.[1] The matter proceeded to trial before a jury in March, 2002. After hearing the evidence, the jury found Harris guilty of rape by force. The trial court subsequently sentenced him to ten years in prison and classified him as a sexual predator. Harris then filed a timely appeal, advancing the assignments of error set forth above.
 {¶ 6} In his first assignment of error, Harris contends the trial court erred by allowing the State to introduce testimony that he had touched A.W. inappropriately on prior occasions. Harris argues that this "other acts" evidence was inadmissible under Evid.R. 404(B), as the State elicited if for the improper purpose of establishing his propensity to rape A.W. See Appellant's Brief at 7. Harris also insists that the prejudicial effect of the testimony warrants the reversal of his conviction.
 {¶ 7} In response, the State contends that the trial court properly admitted testimony about prior allegations of improper touching for the limited purpose of explaining A.W.'s words and actions on June 25, 2001. In particular, the State argues that the trial court properly allowed the testimony to help the jury understand why A.W. was locking her door when she was in the apartment with Harris and what she meant when she called Wiggins from the bus stop and reported that he "did it again."
 {¶ 8} Upon review, we reject Harris's argument that the testimony about prior incidents of improper touching was precluded by Evid.R. 404(B). Although Harris contends that the testimony does not fit within any of the exceptions found in that rule,[2] the State properly notes that those exceptions are not exclusive. As the Ohio Supreme Court recognized in State v. Watson (1971), 28 Ohio St.2d 15, 21, "evidence of other offenses may be received if relevant for any purpose other than to show mere propensity or disposition on [the] accused's part to commit the crime[.]" (Emphasis added). In the present case, the trial court expressly admitted the "other acts" testimony for the limited purpose of explaining A.W.'s actions on the day in question and her excited utterance, after being raped, that Harris "did it again."[3]
 {¶ 9} Although the trial court's admission of the other acts evidence was not precluded by Evid.R. 404(B), we have some reservations about whether the testimony, which concerned prior unsubstantiated allegations of Harris fondling A.W., should have been excluded under Evid.R. 403(A), which provides that evidence, although relevant, is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury. Harris raised this issue in a pre-trial motion in limine. See Trial Transcript at 7. He also renewed his objection at trial. We note, however, that he has not expressly raised the Rule 403(A) issue on appeal. In any event, even if this issue is properly before us, and assuming arguendo that the trial court's evidentiary ruling constituted an abuse of discretion, we easily conclude that any error in the admission of the "other acts" evidence was harmless beyond a reasonable doubt. As explained more fully in our analysis of Harris's second assignment of error, the evidence of his guilt was overwhelming. Among other things, the State presented DNA evidence establishing a one in 2.8 million chance that the semen found in A.W.'s vagina came from someone other than Harris. In light of this evidence, we harbor no doubt that the jury's verdict would have been the same, regardless of the trial court's evidentiary ruling on the "other acts" evidence. Accordingly, we overrule Harris's first assignment of error.
 {¶ 10} In his second assignment of error, Harris insists that, excluding the "other acts" evidence discussed above, his conviction is against the manifest weight of the remaining evidence. When a conviction is challenged as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 11} In the present case, the evidence does not weigh heavily against Harris's conviction. The evidence of his guilt is overwhelming. Most significantly, semen was found in the victim's vagina, and DNA testing revealed only a one in 2.8 million chance that it came from someone other than Harris. See Trial Transcript at 707, 714. Defense counsel did little to impeach the credibility of this evidence, which alone proves his guilt far beyond a reasonable doubt. In addition, A.W. testified that Harris raped her, and Michele Houston, the victim's mother, testified that Harris admitted raping A.W. Id. at 165-170, 497. Although Harris testified at trial, neither he nor his attorney even attempted to explain how his semen ended up in A.W.'s vagina.
 {¶ 12} In light of the foregoing evidence, Harris's conviction plainly is not against the manifest weight of the evidence. Accordingly, we overrule his second assignment of error and affirm the judgment of the Montgomery County Court of Common Pleas.
Judgment affirmed.
WOLFF, J., concurs.
[1] A second, less precise testing technique used by Davis revealed a one in 124 chance that the semen came from a source other than Harris.
[2] Evid.R. 404(B) provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Under the rule, such evidence may be admissible, however, for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id.
[3] The trial court found that this statement by A.W. constituted an excited utterance, and that determination has not been challenged on appeal.